**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| JASMINE PAUL SANCHEZ, | Case No. 3:22-cv-00141-ART-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| v. | |
| R. SAUCEDO, *et. al.,* | [ECF No. 28] |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Jasmine Paul Sanchez ("Sanchez") against Defendants William Reubart ("Reubart") and Ricardo Saucedo ("Saucedo") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 28, 30.)[2] On June 22, 2023, the Court gave Sanchez notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 32.) Despite the Court *sua sponte* granting an extension of time, (ECF No. 34), Sanchez has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 28), be granted.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Sanchez is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Ely State Prison ("ESP"). (ECF Nos. 7, 8.) On March 23, 2022, proceeding *pro se*, Sanchez filed an inmate civil rights complaint

---

[1]     This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]     ECF No. 30 consists of Sanchez's medical records filed under seal.

1 | pursuant to 42 U.S.C. § 1983, ("Complaint"). (ECF No. 1-1.)

2 |       Sanchez's complaint alleges the following: On October 16, 2021, between 3:00

3 | p.m. and 5:28 p.m., Saucedo assaulted and threatened Sanchez. (ECF No. 8 at 3).

4 | Saucedo told Sanchez that Reubart gave Saucedo permission to do as he pleased to

5 | Sanchez, including deny Sanchez food and assault Sanchez and that Saucedo would get

6 | away with it. (*Id.*) Saucedo beat-in Sanchez's face with a nightstick. (*Id.*) While beating

7 | Sanchez, Saucedo commented that Sanchez would not leave ESP alive, the only way

8 | Sanchez would leave ESP was in a body bag or a pine box, and that Saucedo was not

9 | the only prison official that Reubart gave permission to "fuck [Sanchez] off." (*Id.*) Saucedo

10 | commented that the next time prison officials have to deal with Sanchez, they would make

11 | it look like a suicide. (*Id.*) Additionally, Saucedo told Sanchez that, if Sanchez tried to file

12 | a lawsuit, Sanchez would be dead before his lawsuit made it to the courts. (*Id.*) Saucedo

13 | then bent, pulled, and twisted Sanchez's arm "to make good on his threat." (*Id.*) The

14 | Complaint was screened in accordance with 28 U.S.C. § 1915A(a). (ECF No. 7.) Based

15 | on these allegations, the district court allowed Sanchez to proceed on an excessive force

16 | claim and an unsafe prison conditions claim against Defendants.

17 |       In support of the motion for summary judgment, Defendants submitted declarations

18 | and authenticated evidence. This evidence is undisputed by Sanchez. Thus, the

19 | undisputed facts in this case are as follows. According to a declaration filed by Saucedo,

20 | as well as Sanchez's disciplinary history report, on October 16, 2021, Defendant Saucedo

21 | was working in Unit 2 of Ely State Prison. (ECF Nos. 28-4, 28-1.) Saucedo was conducting

22 | the dinner feeding. (*Id.*) As he approached cell 2B-3, he opened the food slot to give

23 | Sanchez his dinner. (*Id.*) Sanchez stuck his arm through the slot, thus, "capturing" the slot.

24 | Saucedo tried to reason with Sanchez to determine why he had captured the slot. (*Id.*)

25 | Sanchez then threw an unknown liquid on Saucedo, spit at him, and punched Saucedo in

26 | the stomach. (*Id.*) Saucedo pushed on the slot to trap Sanchez's arm and prevent further

27 | attacks. (*Id.*) Saucedo also pulled out his collapsible baton to protect himself, but did not

28 | strike Sanchez with the baton. (*Id.*) Saucedo never told Sanchez that he would be killed

1    or that Warden Reubart had given him carte blanche to hurt Sanchez. (*Id.*)

2        Other officers arrived to assist. (ECF No. 28-6.) One responding officer, Madeline

3    Pickens, filed a declaration in support of Defendants' motion for summary judgment. The

4    declaration stated that she witnessed Sanchez spit at Saucedo, striking him in his upper

5    extremity and then saw Sanchez punch Saucedo in the stomach. (*Id.*) She witnessed

6    Saucedo pull out his collapsible baton and approach Sanchez, but Saucedo did not strike

7    Sanchez with the baton, and could not strike Sanchez in the face, as his face was on the

8    other side of a metal door. (*Id.*)

9        Once Sanchez backed away, medical personnel arrived at the scene and Sanchez

10   was evaluated. (ECF No. 30 (sealed).) He had some slight swelling on his arm, but stated

11   "he was fine." (*Id.*) There were no marks or swelling on his head or face. (*Id.*) He was given

12   some IBU for the swelling and pain. (*Id.*) Based on this incident, Sanchez was charged

13   with battery. (ECF No. 28-3.) After a disciplinary hearing, he was found guilty of battery

14   and placed in disciplinary segregation (*Id.*)

15       Defendant Reubart also submitted a declaration in support of the motion for

16   summary judgment, which states that he never told Saucedo, or any other person, that

17   they could injury or assault Sanchez, or any other inmate, without repercussions. (ECF

18   No. 28-5.) Reubart did not authorize any person to "kill, injure or deny food to [Sanchez]."

19   (*Id.*) Reubart has never made any such statement to Sanchez or threatened him in any

20   way. (*Id.*)

21       According to Sanchez's Inmate Disciplinary History Report, Sanchez has a long

22   disciplinary history based on throwing feces and urine and has had "propelling" charges

23   and battery charges filed against him on several occasions. (ECF No. 28-1.)

24       On June 21, 2023, Defendants filed the instant motion for summary judgment

25   arguing there are no genuine issues of material fact and Sanchez cannot demonstrate that

26   the Defendants violated his constitutionally protected rights, and alternatively, the

27   Defendants are entitled to qualified immunity. (ECF No. 28.) Sanchez did not oppose the

28   motion and has not disputed any of the facts as stated above.

## II.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence

1  to support an essential element of the nonmoving party's claim or claims; or (2) submitting

2  admissible evidence that establishes the record forecloses the possibility of a reasonable

3  jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*,

4  905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d

5  1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising

6  therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763

7  F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary

8  judgment, the nonmoving party is not required to provide evidentiary materials to oppose

9  the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

10  Where the moving party has met its burden, however, the burden shifts to the

11  nonmoving party to establish that a genuine issue of material fact actually exists.

12  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The

13  nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*

14  *v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation

15  omitted). In other words, the nonmoving party may not simply rely upon the allegations or

16  denials of its pleadings; rather, they must tender evidence of specific facts in the form of

17  affidavits, and/or admissible discovery material in support of its contention that such a

18  dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden

19  is "not a light one," and requires the nonmoving party to "show more than the mere

20  existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d

21  376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from

22  which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf*

23  *Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere

24  assertions and "metaphysical doubt as to the material facts" will not defeat a properly

25  supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v.*

26  *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

27  When a *pro se* litigant opposes summary judgment, his or her contentions in

28  motions and pleadings may be considered as evidence to meet the non-party's burden to

1    the extent: (1) contents of the document are based on personal knowledge, (2) they set

2    forth facts that would be admissible into evidence, and (3) the litigant attested under

3    penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923

4    (9th Cir. 2004).

5          Upon the parties meeting their respective burdens for the motion for summary

6    judgment, the court determines whether reasonable minds could differ when interpreting

7    the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

8    *of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

9    the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

10   Nevertheless, the court will view the cited records before it and will not mine the record for

11   triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does

12   not make nor provide support for a possible objection, the court will likewise not consider

13   it).

14   **III.    DISCUSSION**

15        **A.    Excessive Force**

16        The Eighth Amendment's proscription on cruel and unusual punishment forbids

17   prison officials from inflicting "the unnecessary and wanton infliction of pain . . .."  *Whitley*

18   *v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar

19   on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-

20   10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force

21   claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the

22   relationship between the need and amount of force; (4) the threat reasonably perceived

23   by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a

24   forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*,

25   559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

26        The inmate must demonstrate that officials acted maliciously and sadistically to

27   prevail. "[W]henever prison officials stand accused of using excessive physical force in

28   violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was

1    applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

2    to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

3        [t]he "malicious and sadistic" standard arose out of "the need to maintain or
         restore discipline" inside the prison. When a prison disturbance occurs,
4        prison officials must make "decisions 'in haste, under pressure, and
         frequently without the luxury of a second chance.'" In these situations, prison
5        officials are "accorded wide-ranging deference" and therefore, prisoners
         alleging excessive force must show that the force was applied "maliciously
6        and sadistically to cause harm."

7

8    *Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at

9    6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the

10   factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm

11   as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover,

12   there is no need for a showing of serious injury as a result of the force, but the lack of such

13   injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v.*

14   *Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

15        Excessive force cases "nearly always requires a jury to sift through disputed factual

16   contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has

17   "held on many occasions that summary judgment or judgment as a matter of law in

18   excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853

19   (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003);

20   *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

21        In the motion for summary judgment, Defendants contend reasonable force was

22   used under the circumstances. (ECF No. 28.) Saucedo trapped Sanchez's arm with the

23   food slot in response to Sanchez sticking his arm out, propelling a substance, spitting, and

24   ultimately punching Saucedo. These facts were corroborated by several accounts of the

25   same incident. Thus, Defendants contend that briefly trapping Sanchez's arm with the food

26   slot cannot be considered unreasonable under the circumstances. (*Id.*)

27        As discussed above, the undisputed facts, uncontradicted by Sanchez, are as

28   follows. On October 16, 2021, Defendant Saucedo was working in Unit 2 of Ely State

7

1  Prison. (ECF Nos. 28-4, 28-1.) Saucedo was conducting the dinner feeding. (*Id.*) As he

2  approached cell 2B-3, he opened the food slot to give Sanchez his dinner. (*Id.*) Sanchez

3  stuck his arm through the slot, thus, "capturing" the slot. Saucedo tried to reason with

4  Sanchez to determine why he had captured the slot. (*Id.*) Sanchez then threw an unknown

5  liquid on Saucedo, spit at him, and punched Saucedo in the stomach. (*Id.*) Saucedo

6  pushed on the slot to trap Sanchez's arm and prevent further attacks. (*Id.*) Saucedo also

7  pulled out his collapsible baton to protect himself, but did not strike Sanchez with the

8  baton. (*Id.*) Saucedo never told Sanchez that he would be killed or that Warden Reubart

9  had given him carte blanche to hurt Sanchez. (*Id.*)

10       Other officers arrived to assist. (ECF No. 28-6.) One responding officer, Madeline

11  Pickens, filed a declaration in support of Defendants' motion for summary judgment. The

12  declaration stated that she witnessed Sanchez spit at Saucedo, striking him in his upper

13  extremity and then saw Sanchez punch Saucedo in the stomach. (*Id.*) She witnessed

14  Saucedo pull out his collapsible baton and approach Sanchez, but Saucedo did not strike

15  Sanchez with the baton, and could not strike Sanchez in the face, as his face was on the

16  other side of a metal door. (*Id.*)

17       Once Sanchez backed away, medical personnel arrived at the scene and Sanchez

18  was evaluated. (ECF No. 30 (sealed).) He had some slight swelling on his arm, but stated

19  "he was fine." (*Id.*) There were no marks or swelling on his head or face. (*Id.*) He was given

20  some IBUs for the swelling and pain. (*Id.*) Based on this incident, Sanchez was charged

21  with battery. (ECF No. 28-3.) After a disciplinary hearing, he was found guilty of battery

22  and given disciplinary segregation (*Id.*)

23       Here, based on the undisputed evidence, the majority of the *Hudson* factors

24  objectively weigh against finding an Eighth Amendment violation. *See Hudson*, 503 U.S.

25  at 6-7. First, using force generally was necessary. Sanchez explicitly threatened Saucedo

26  when he stuck his hand out of his food slot, propelled a substance, spit, and ultimately

27  punched Saucedo.

28  ///

1    Second, the amount of force used was proportional to the need. Saucedo used

2    minimal force to hold Sanchez's arm down to prevent him from throwing further punches.

3    There is no evidence that Saucedo used other, greater force to accomplish this. Thus, the

4    force used was objectively minimal and proportional to the need to gain control of

5    Sanchez's arm. Third, the injuries reported were minimal, if not de minimis. Sanchez

6    suffered slight swelling on his arm but had no injuries to his head or face (despite what

7    Sanchez alleged) and reported to medical that "he was fine." Thus, both the force used,

8    and Sanchez's injuries were insignificant here.

9    Next, the threat Saucedo reasonably perceived was significant. As discussed

10   above, not only does Sanchez have a lengthy disciplinary history for "propelling" feces and

11   urine and a lengthy disciplinary history for battery, Sanchez actually propelled a substance

12   at Saucedo and battered him during this incident. Thus, when Sanchez struck Saucedo,

13   a reasonable officer would have felt threatened. Finally, Saucedo made efforts to temper

14   the severity of his use of force. However, officers are sometimes required to use force if

15   an inmate refuses a valid order. *Whitley*, 475 U.S. at 320. Saucedo had already instructed

16   Sanchez to keep himself clear of the food slot, and only resorted to trapping Sanchez's

17   arm with the food slot after Sanchez had struck him.

18   Based on the evidence before the Court, all five of the relevant *Hudson* factors

19   weigh in favor of finding that Saucedo did not use excessive force. There is no dispute as

20   to the minimal amount of force used, the circumstances under which it was applied, and

21   the minimal injuries to Sanchez as a result of the minimal force. As such, there is no

22   genuine issue of material fact as to the merits of the excessive force claim. Sanchez does

23   not, and cannot, show that Saucedo applied force maliciously and sadistically to cause

24   harm rather than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503

25   U.S. at 6. To the contrary, Saucedo applied a minimal amount of force necessary in a

26   good-faith effort to maintain order, and it was not done maliciously or sadistically to cause

27   harm. Accordingly, the Court recommends Defendants' motion for summary judgment be

28   granted as to the excessive force claim.

1

**B.      Unsafe Prison Conditions**

2    The "treatment a prisoner receives in prison and the conditions under which he is

3    confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509

4    U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take

5    reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S.

6    825, 832 (1994). To establish violations of these duties, the prisoner must establish that

7    prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at

8    834. To demonstrate deliberate indifference, the prisoner must show that "the official

9    [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both

10   be aware of facts from which the inference could be drawn that a substantial risk of serious

11   harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may

12   not escape liability because they cannot, or did not, identify the specific source of the risk;

13   the serious threat can be one to which all prisoners are exposed. *Id.* at 843. Further, a

14   plaintiff "must also demonstrate that the defendants' actions were both an actual and

15   proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir.

16   2013); *see also Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

17   Sanchez's unsafe prison conditions claim is premised on allegations that Reubart

18   created an excessive risk to Sanchez's safety by giving correctional officers, such as

19   Saucedo, permission to assault Sanchez without any repercussions. (ECF Nos. 7, 8.) As

20   discussed above, Defendant Reubart submitted a declaration in support of the motion for

21   summary judgment, which states that he never told Saucedo, or any other person, that

22   they could injury or assault Sanchez, or any other inmate, without repercussions. (ECF

23   No. 28-5.) Reubart did not authorize any person to "kill, injure or deny food to [Sanchez]."

24   (*Id.*) Reubart has never made any such statement to Sanchez or threatened him in any

25   way. (*Id.*) Defendant Saucedo also submitted a declaration in support of the motion for

26   summary judgment, which states that he never told Sanchez that Reubart gave him

27   permission to hurt Sanchez. (ECF No. 28-4.)

28   ///

1        Based on the record before the Court, there is no evidence that Reubart created

2 an excessive risk to Sanchez's safety. Aside from the bare assertions in Sanchez's

3 complaint, there is no evidence to support his allegations. *See Taylor v. List*, 880 F.2d

4 1040, 1045 (9th Cir. 1989) (the opposing party may not rest on conclusory allegations or

5 mere assertions). Sanchez's conclusory statements and pleading allegations, which are

6 uncorroborated by the evidence before the Court, are insufficient to establish the presence

7 of a genuine dispute. *Soremekun*, 509 F.3d at 984. Accordingly, the Court recommends

8 Defendants' motion for summary judgment be granted as to the unsafe prison conditions

9 claim.[3]

10 **IV.    CONCLUSION**

11        For good cause appearing and for the reasons stated above, the Court

12 recommends that Defendants' motion for summary judgment, (ECF No. 28), be grant.

13        The parties are advised:

14        1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

15 Practice, the parties may file specific written objections to this Report and

16 Recommendation within fourteen days of receipt. These objections should be entitled

17 "Objections to Magistrate Judge's Report and Recommendation" and should be

18 accompanied by points and authorities for consideration by the District Court.

19        2.     This Report and Recommendation is not an appealable order and any notice

20 of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District

21 Court's judgment.

22 **V.    RECOMMENDATION**

23        **IT IS RECOMMENDED** that Defendants' motion for summary judgment, (ECF No.

24 28), be **GRANTED**.

25 ///

26

27    [3]    Because the Court recommends that the motion for summary judgment be granted
in its entirety based on a finding that no constitutional violations occurred, it need not
28 address the argument regarding qualified immunity.

1    **IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT**

2  accordingly and **CLOSE** this case.

3  **DATED**: _August 15, 2023_____.

4

5  _____
   **UNITED STATES MAGISTRATE JUDGE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28